1  **WO**
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**
7 **FOR THE DISTRICT OF ARIZONA**
8

| | |
|---|---|
| Robert Johnson, | No. CV-17-02710-PHX-SMB |
| Plaintiff, | **ORDER GRANTING DEFENDANT COSTCO'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Costco Wholesale Corporation, et al., | |
| Defendants. | |

At issue is Defendant Costco Wholesale Corporation's Motion for Summary Judgment (Doc. 74, Mot.), to which Plaintiff Robert Johnson filed a Response (Doc. 81, Resp.), and Defendant Filed a Reply (Doc. 90, Reply). Defendant also filed a Separate Statement of Facts in Support of its Motion (Doc. 75, SSOF). Plaintiff filed a Separate Statement of Facts in Support of his Response (Doc. 82, PSOF), but he failed to include a controverting statement of facts as required by LRCIV 56.1(b). Accordingly, the Court deems Defendant's statement of facts that are supported by citations to the record to be true.[1] *Szaley v. Pima Cty.*, 371 Fed. Appx. 734, 735 (9th Cir. 2010); *Pierson v. City of Phoenix*, No. CV-16-02453-PHX-DLR, 2017 WL 4792122, at *1 (D. Ariz. Oct. 24, 2017). Oral argument was held on January 10, 2019.

### I. Background

Johnson was shopping at a Costco in Gilbert, Arizona, on April 30, 2015, when he

---

[1] While Plaintiff submitted his own statement of facts, it is sparse. It contains only six statements, none of which controvert Defendant's sixty-three statements of fact.

alleges he was injured by Costco's negligence. Specifically, he alleges the customer in front of him at the checkout placed a "sparkling wine-type bottle" upright on the conveyer belt, which fell off and shattered, resulting in glass striking his face. The bottle allegedly hit a device on the belt meant to move the item closer to the cashier, which knocked it over the one-to-six-inch-tall guardrail. As it was falling, Johnson unsuccessfully attempted to catch the bottle, and it hit the floor. (SSOF ¶ 4–5). After it hit the floor, it bounced up at least two feet before falling to the ground again and exploding. (SSOF ¶ 5).

In his complaint, Johnson states Costco acted negligently in four ways: (1) by failing to maintain the conveyor belt in a reasonably safe condition; (2) by allowing the bottle to proceed upright on the conveyor belt, which created an unreasonable risk of harm because it was more susceptible to falling; (3) by failing to warn Johnson and other customers of the inherent dangers of placing bottles upright; and (4) by failing to otherwise exercise due care. At oral argument and in his response, he indicated his position has evolved slightly. He conceded he has discovered no evidence of a maintenance problem with the conveyor belt, and his alleged breaches of care are: (1) the conveyor belt did not have a tall enough guardrail; (2) Costco should not have allowed the bottle to proceed unless it laid the bottle on its side; and (3) Costco failed to warn customers about the possibility of carbonated glass bottles falling off the conveyor belt.[2]

When the bottle "exploded," the shattered glass lacerated Johnson's left eyelid, for which he declined medical treatment at the scene. (SSOF, Ex. 4 at 10). He also claims the exploding bottled created a "blast wave" that caused extensive injuries beyond the laceration. (SSOF ¶ 7). He alleges he suffered a traumatic brain injury, a stroke or aneurysm, facial nerve and muscle damage, occasional slurred speech, breathing and movement issues, anxiety/depression, and dental damages. (SSOF ¶ 7). He alleges the injury also has caused daily migraines and sleep disruption. (SSOF, Ex. 4 at 4–5, 7). He alleges the accident further affected his work life, resulting in him having to take 212.5

---

[2] At oral argument, Johnson argued that the bottle was higher risk than "a regular bottle of wine" because it's "explosive."

hours of sick time due to the incident and costing him $750,000 in retirement benefits. (SSOF, Ex. 5 at 7). His alleged medical bills from the incident totaled $8,312.23 as of March 26, 2018.

Johnson disclosed his expert witnesses on April 16, 2018, the deadline for doing so. (Doc. 63). Johnson did not disclose any experts to testify that Costco breached the applicable standard of care. The disclosure listed six medical professionals that treated Johnson and one "unknown neurologist" that had yet to treat Johnson. Plaintiff's six experts were listed as: (1) Megan McCarthy, MSN FNP; (2) Dr. Rozbeh Torabi, M.D.; (3) Dr. Charanjit Dhillon, M.D.; (4) Dr. Bilal Hameed, M.D.; (5) Dr. Jamie Rawson, M.D.; (6) Dr. Andrew Ducruet, M.D. Johnson listed the providers along with their address and the information that they had treated Johnson and would "testify on the issue of causation." On May 8, 2018, Johnson also updated the unknown neurologist to Dr. Sean Southland, Ph.D., "who treated Plaintiff on April 18, 2018." Dr. Southland was also supposed to "testify on the issue of causation." For each of these witnesses, Johnson did not provide a report or summary of the facts and opinions to which the witnesses were expected to testify. (Doc. 63). He merely provided their names, titles, addresses, and that they would testify as to causation. His supplemental disclosure adding Dr. Southland included the same information plus the date he treated Johnson.

On June 18, 2018, Johnson filed a motion to supplement his expert witness disclosure to add Dr. Michael J.A. Robb, M.D., an oto-neurologist that treated Johnson after the expert witness deadline, and to designate one of his fact witnesses, Gloria Cales, as an expert witness as well. Johnson wanted Ms. Cales to testify about his wage and pension rights, but "inadvertently omitted [her] from the expert witness list." (Doc. 83). Judge Logan denied Johnson's motion. (Doc. 95). The motion did not include a request to add any experts that would testify about whether Costco breached its duty to keep customers reasonably safe.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the

nonmoving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

### III. Analysis

Federal courts sitting in diversity apply substantive state law to state-law claims. *Lukes v. American Family Mut. Ins. Co.*, 455 F.Supp. 1010, 1013 (D. Ariz. 2006). Johnson bears the burden of proving negligence, and it is not up to Costco to prove of absence thereof. *Berne v. Greyhound Parks of Ariz.*, 448 P.2d 388, 389 (Ariz. 1968). To succeed on a negligence claim in Arizona, Johnson must prove Costco had (1) a "duty to conform to a certain standard of care"; (2) Costco breached that standard; (3) there is a "causal connection" between Costco's conduct and the resulting injury; and (4) it resulted in "actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). Costco moves for summary judgment on the second and third elements, contending that Johnson needs expert testimony to establish Costco breached the appropriate standard of care in operating the conveyor belt and that he is unable to prove the exploding bottle is the medical cause of his injuries. For the reasons that follow, the Court agrees Johnson cannot establish that Costco breached the appropriate standard of care without expert testimony, and Costco's motion for summary judgment is granted.

1. <u>Johnson must prove Costco breached the standard of care by showing they had an obligation to discover and correct or warn of unreasonably dangerous conditions.</u>

In a premises liability negligence claim, a business has an affirmative duty to keep its premises reasonably safe for customers, but the business is not directly responsible for a dangerous condition solely because the accident occurred on its property. *Chiara v. Fry's Food Stores of Arizona, Inc.*, 733 P.2d 283, 284 (Ariz. 1987). Costco does not contest it owed Johnson a duty to keep its premises safe. Its argument is that Johnson has not presented any admissible evidence that could establish it breached that duty because Johnson does not have an expert to opine on the standard of care. The appropriate question, then, is what Johnson must show to prove Costco breached its duty of reasonable care.

"Whether the defendant has met the standard of care—that is, whether there has been a breach of duty—is an issue of fact that turns on the specifics of the individual case." *Gipson*, 150 P.3d at 230. Generally, the standard of reasonable care "includes an obligation to discover and correct or warn of unreasonably dangerous conditions that the possessor of the premises should reasonably foresee might endanger an invitee." *McMurtry v. Weatherford Hotel, Inc.*, 293 P.3d 520, 528 (Ariz. Ct. App. 2013). "To establish a proprietor's liability for injuries arising from a dangerous condition of the premises, an invitee must prove either that the dangerous condition was caused or permitted to develop by persons for whom the proprietor was responsible or that the proprietor had actual or constructive knowledge of its existence." *McDonald v. Smitty's Super Valu, Inc.*, 757 P.2d 120, 122 (Ariz. Ct. App. 1988). A dangerous condition is foreseeable when it can "reasonably be expected to occur now and then, and would be recognized as not highly unlikely if it did suggest itself to the actor's mind." *Id.* at 529 (internal quotes and citations omitted); *see also Quiroz v. Alcoa Inc.*, 416 P.3d 824, 829 (Ariz. 2018) ("[F]oreseeability may still be used in determining breach and causation.").

Accordingly, the Court cannot assume Costco is responsible solely because the accident occurred on its premises. At trial, Johnson must be able to prove that Costco breached the standard of care by showing the bottle being placed on the conveyor belt created an unreasonably dangerous condition that Costco knew of or, in the exercise of reasonable care, should have discovered and corrected or warned of.

2. <u>Johnson requires expert testimony to prove Costco had an obligation to discover and correct or warn that putting a carbonated glass bottle on the conveyor belt is an unreasonably dangerous condition.</u>

Whether a premises owner has exercised the care required to keep the premises in a reasonably safe condition for invitees is usually a question of fact for the jury, *Walker v. Montgomery Ward & Co., Inc.*, 511 P.2d 699, 702 (Ariz. Ct. App. 1973), but Costco argues Johnson cannot prove Costco breached the standard of care without expert testimony. Expert testimony may be required to prove a defendant breached the standard of care when "factual issues are outside the common understandings of jurors." *Rossell v. Volkswagen*

*of Am.*, 79 P.2d 517, 524 (Ariz. 1985). It is not required "when the disputed subject is something that persons unskilled in the relevant area are capable of understanding and are therefore able to decide relevant fact questions without the opinions of experts." *Rudolph v. Arizona B.A.S.S. Federation*, 892 P.2d 1000, 1004 (Ariz. Ct. App. 1995); *see also Rhodes v. Energy Marine LLC*, No. CV-14-08206-PCT-JJT, 2016 WL 6700973, at *3 (D. Ariz. Nov. 15, 2016) ("Expert testimony is required whenever proof of an element of a claim, such as the duty of care or causation, calls for information that is outside an ordinary person's common knowledge.").

Costco is correct that, given the record in this case, none of the three alleged breaches can be proven without expert testimony. Inherent in each of Plaintiff's claims is the problem that the accident occurred while checking out at a store, a common activity that is not inherently dangerous. A landowner is not obligated to warn invitees of dangers that are generally known to be inherent in conditions which are obvious. *Flowers v. K-Mart Corp.*, 616 P.2d 955, 957–58 (Ariz. Ct. App. 1980); *accord Goodman v. Stables the Office Superstore, LLC*, 644 F.3d 817, 823 (9th Cir. 2011) (noting a proprietor is only liable when it should anticipate the harm from a condition); *Tribe v. Shell Oil Co.*, 652 P.2d 1040, 1042 (Ariz. 1982) (same); *see also Cummings v. Prater*, 386 P.2d 27, 31 (Ariz. 1963) ("People can get hurt on almost anything. But the mere fact of an injury does not compel the conclusion that the condition was unreasonably dangerous."). While *Goodman*, 644 F.3d at 823–24, and *Tribe*, 652 P.2d at 1042, held that whether the particular conditions in those cases were open and obvious were a questions for a jury because they occurred near where customers were likely to be distracted, Johnson testified here that he was well aware of the "lip" on the side of the conveyor belt and noticed the bottle right away. He has not presented any evidence to explain why Costco should have anticipated harm from the alleged breaches.

An everyday activity such as checking out at a warehouse or grocery store is not inherently dangerous. *See Chaney v. Starbucks Corp.*, 115 F. Supp. 3d 380, 387 (S.D.N.Y. 2015). Johnson has not come forward with any evidence to show that the alleged breaches

are out of the norm and thus unreasonably dangerous. The Court will address each of the alleged breaches in turn.

> a. *Johnson's claim that the conveyor belt's guardrail should have been higher*

Costco argues Johnson has produced no evidence about the design and functioning of the conveyor belt that shows the height of the guardrail breached the standard of care and cannot do so without expert evidence. Johnson replies that a trier of fact only "needs to know that the guardrail is insufficient to contain a toppling bottle as it is moved down the conveyor belt." (Resp. at 3). His recollection of the incident is an arm that was part of the conveyor belt knocked the bottle from an upright position over the guardrail and to the ground. At of the close of discovery, the only possible evidence in the record about the height of the guardrail is from a Costco cashier who estimated the height of it to be between one and six inches. In order to survive the motion for summary judgment, Johnson must be able to show through admissible evidence that a reasonably jury could conclude the height of the guardrail created an "unreasonably dangerous" condition that Costco should have discovered.

Costco has cited multiple cases that show proving a breach of the standard of care in regard to mechanical devices generally requires expert testimony. *See Huffman v. Electrolux Home Products, Inc.*, 129 F. Supp. 3d 529, 544 (N.D. Ohio 2015) (washing machine); *McWilliams v. Yale Carolinas, Inc.*, No. 2:13-CV-351-WC, 2014 WL 1779253, at *5 (M.D. Ala. May 5, 2014) (forklift); *Adams v. Washington Metro Area Transit Auth.*, Civil No. PJM 14-361, 2014 WL 6678588, at *1 (D. Md. Nov. 24, 2014) (escalator). The *McWilliams* court held that expert testimony was required because "a forklift is a machine composed of parts that would not be familiar to the lay juror." 2014 WL 1779253 at *5. The *Adams* court held similarly, noting experts are required in cases "concerning the malfunction of complex machinery." 2014 WL 6678588 at *1 (internal quotation marks omitted). Johnson attempts to distinguish *Huffman* by arguing that at issue in that case was a much more complex design of a washing machine in relation to preventing mold in the use of the machine. He makes no effort to explain why *McWilliams* and *Adams* are

different.

A conveyor belt cash register is not a simple machine, however, and even though Johnson has dropped his claim that Costco failed to maintain the conveyor belt in a safe condition, he must still prove that something about the conveyor belt's operation created an unreasonably dangerous condition. Though ordinary jurors likely have used a conveyor belt at a cash register, there are still many parts that would be unfamiliar to them. Without expert testimony, Johnson has no evidence of what the height of the guardrail should have been, whether the appropriate height changes depending on how fast the conveyor belt moves, what kind of items should or should not be placed on it, or whether the arm was placed improperly or should not have been part of the design at all.

With regard to the guardrail claim, the record available to the Court does not show with any specificity how tall the bottle was, how tall the guardrail was, or how tall the guardrail should have been. Johnson's bare assertions that the guardrail should have been tall enough to prevent the bottle from falling are unconvincing without expert testimony explaining conveyor belt's functions, what the guardrail is designed to prevent, or what the standard height for a guardrail should be. As Johnson stated himself at oral argument, "a percentage of the items that go on the conveyor belt don't present any danger to the customers." The Court is left to wonder what percentage that is, and at what point does the percentage become high enough to be unreasonably dangerous. Similarly, a jury would only be able speculate about whether the guardrail was tall enough to prevent the conveyor belt from being an unreasonably dangerous condition that Costco created. Accordingly, Johnson cannot establish the existence of a material fact as to whether Costco breached its standard of care regarding the height of the guardrail.

b. *Johnson's claim that the bottle should have been laid down*

Johnson claims Costco breached the standard of care by failing to lay the bottle down before allowing the conveyor belt to proceed. Again, Costco argues Johnson needs expert testimony to prove it breached its standard of care. For Costco to be liable for the bottle proceeding on the conveyor belt, Johnson must prove that this was an unreasonably

dangerous condition Costco permitted to develop or had actual or constructive knowledge of its existence. *McDonald*, 757 P.2d at 122. "Notice is proven constructively by establishing that the condition existed long enough that, in the exercise of ordinary care, the defendant should have discovered and corrected it." *Id.* Like in the conveyor belt claim, however, Johnson provides nothing more than bare assertions.

Johnson has presented no evidence that Costco knew or should have known allowing the bottle to proceed upright was a dangerous condition. Even after discovery, he has not even presented evidence of a history of bottles or other items falling off the conveyor belt creating an unreasonably dangerous condition. Why Costco would have actual or constructive notice that the bottle proceeding upright was an unreasonably dangerous condition is unclear. Nevertheless, he alleges that the bottle was an "explosive" subject to a higher standard of care than a regular wine bottle and that Costco should have been aware that it was an unreasonably dangerous condition to let it proceed upright on the conveyor belt.

Johnson fails to appreciate that he is making a highly technical argument. It is not obvious to ordinary jurors why the bottle should have been laid down nor why that bottle requires extra care compared to a regular wine bottle. In the only bottle explosion case either party cited, *Ball Corp. v. George*, 556 P.2d 1143 (Ariz. 1976), the parties relied heavily on expert testimony. In that case, the experts testified to glass thickness, gas pressure, the amount of force sufficient to break the glass, and the effect of a "prior bruise" on the bottle. *Id.* at 1145–46. All of that information is absent here, as is any information about the shape of the bottle and its relative safety on a conveyor belt when stood upright or laid down. Johnson merely contends that "if a bottle is laid down on its side, it would be less likely to fall off the side of the conveyor belt, given the height of the guard rail involved." (Resp. at 4).

Whether something is "less likely" to fall or not is not the same as finding the defendant's actions breached the standard of care. There are plenty of precautions that would make accidents at businesses less likely but are not necessarily required by the

standard of care. Johnson is essentially arguing that Costco should have specialized knowledge that the bottle proceeding upright is an unreasonably dangerous condition it should have known about and prevented. This type of knowledge calls for information that is outside an ordinary person's common knowledge. Such a claim requires expert testimony. Without expert testimony, the Court (and the jury) is again left to speculate whether the bottle is among the "percentage of items" that "don't present any danger to the customers." Accordingly, Johnson cannot establish the existence of a material fact as to whether Costco breached its standard of care by allowing the bottle to proceed upright.

### c. *Johnson's claim that Costco was required to warn customers to lay down their bottles*

At oral argument and in the complaint, Johnson alleged that Costco breached its standard of care by failing to warn customers about the danger from the bottle. This is at odds with his written response to the motion at issue, which states: "Plaintiff is not arguing that a sign to lay down the bottles would satisfy the defendant's standard of care. Only a guard rail tall enough to prevent a champagne bottle from falling would be sufficient." (Resp. at 3–4). Despite this contradiction, the Court will address the claim.

This argument fails for the same reason his second alleged breach does. A business is only required to warn of "unreasonably dangerous conditions that the possessor of the premises should reasonably foresee might endanger an invitee." *McMurtry*, 293 P.3d at 528. That is, Costco only has an obligation to warn of a condition if it is unreasonably dangerous and it knows of it or should know of it. Johnson needs expert testimony to establish this because it is not within the common understanding of jurors why the bottle at issue in this case requires such a warning. As previously discussed, ordinary jurors do not know about glass thickness, gas pressure, bottle shapes, or stability when stood upright compared to laid down, and they do not think of the type of bottle at issue as an "explosive."

Additionally, Plaintiff testified that he has never seen a warning sign to customers to place their bottles flat on the conveyor belt in any other retain establishment. Therefore, he would need some expert testimony to explain why Costco is out of the norm and should

have a warning sign. Without expert testimony, Johnson cannot establish Costco breached the standard of care by failing to warn customers of the dangers of putting the bottle on the conveyor belt that it allegedly should have been aware of.

### IV. Conclusion

Johnson bears the burden of proving negligence in this case. Without expert testimony, he is unable to prove Costco breached the applicable standard of care. Because proving Costco breached the applicable standard of care is an essential element to a negligence claim, Johnson is unable to prove his negligence claim and summary judgment is proper. Having granted summary judgment as to Johnson's failure to prove Costco breached the standard of care, the Court need not consider Costco's second argument regarding causation.

Accordingly, **IT IS ORDERED** that:

1. The motion for summary judgment by defendant Costco is **GRANTED**. The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiff and shall close this case.

Dated this 18th day of January, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge